Good morning, everybody. We're going to begin today with Appeal Number 22-3118, Grambling Lambach and Chris Lambach versus Conte in Milwaukee County. Mr. Ganser, we'll begin with you. Thank you, Your Honor. I've reserved two minutes for rebuttal. You may please the court. My name is Michael Ganser, and I represent Lorene Grambling Lambach and Christopher Lambach, who both attend court today, with me. Ms. Lambach was arrested, and she had done absolutely nothing wrong. When she was arrested, she was the president of a merged group of social service agencies. And when the arrest took place, her picture in jail garb ended up on the internet, on television, and in the newspaper. It cost her her job, it cost her her career, it cost her her friends, and it cost her societal scorn. I just plan to discuss probable cause, the Monell case, qualified immunity, and phone calls. But the bottom line here is that this woman was unlawfully arrested. Mr. Ganser, before you go further, can I just clarify, because it wasn't crystal clear in the briefing, are you pursuing a Fourth Amendment, a Fifth Amendment, and a Sixth Amendment? Really, it's just a Fourth Amendment case, Your Honor. OK, so you're not pursuing a separate Fifth Amendment or Sixth Amendment 1983 claim? No. This is really the wrongful arrest, and that is a Fourth Amendment claim. Of course, the Fourth Amendment provides that there shall not be arrest except upon probable cause, and here there's no probable cause. When Officer Conte arrested this woman, he had done so pursuant to a search warrant that he obtained from the circuit court. And the only thing that he was able to establish, and I pointed this out in the briefing with respect to the probable cause statement he submitted to the circuit court, was that there was grant money awarded to these agencies, and they were merging agencies, so her duties were incredibly varied at that point. The computers were ordered from the Dell Corporation, and that somehow the computers didn't show up. And what happened thereafter is these women, five women, that worked for her complained to the arresting officer and others in the county that this woman had committed fraud without any basis for saying so other than the fact that those computers didn't show up, and apparently they didn't like her. But the arresting officer here, Detective Conte, never even bothered to check with Dell to see what happened to the computers. You know, I mean, we could get... Why is that required to establish probable cause? He had five witnesses, four of whom worked there and had firsthand knowledge, said that this order had been placed for the computers, that it was for grant money, that the computers never showed up, and the grant money was never returned. So why do you, for probable cause purposes, why would he need to do more? Well, I think he absolutely has to do more because he's got these five people who are not versed in the law saying, this woman committed fraud. But why does it matter if they're versed in the law when they've given him the facts that in his mind established probable cause? Well, if we look to the element... Because it can't be, I mean, if the law were that every witness had to know the law in order to establish probable cause, things would look very different. That's not what the law is. Totally agree. And the reason is because this officer, Detective Conti, is the person who is, in some respects, the gatekeeper. So if somebody comes up to him and says, oh, she did this or she did that, and well, first thing you got to do is check to see if that's what they did, and he never even did that. What about the fact that there are five individuals saying the same thing and they corroborate each other? They corroborate each other from the standpoint that they all said there was fraud. But let's look at... They all said there was an order placed using the grant money for the computer equipment and the computer equipment never came and the grant money wasn't returned. That is correct. So more than just putting a label of fraud on it. They gave the facts. Right. But let's look at what the elements of theft by fraud are, which is what the officer said was the purpose for the arrest. Obtain property of another by way of intentional deceit by a false representation with intent to defraud and which actually defrauds. And I would suggest that not a single one of those elements were met in this case. The property of another, is it the county's money? Is it the computer's? I mean, the truth of the matter is after the fact, after the arrest and several months, maybe even a year later, the arresting officer started to look into their personal financial records. You know, the credit cards, the banking statements, everything that they had. He subpoenaed those records and looked at them. So what that tells me is that he didn't know  what happened with the computers. And so Mr. Ganser, should we get the sequence correct? Search warrants are issued. She gets arrested. She gets booked. She's overnight in jail. The next day, a state court, either commissioner or a judge, does the probable cause determination. She gets released. At some point, this case goes to the DA's office, White Collar Unit, and they decide not to charge. Correct. How long is that? Well, actually, we filed this lawsuit right before the running of the statute of limitations because I guess you could say they never even decided that until just prior to that time when ultimately a letter was issued by the DA's office saying there will be no charges. All right, thank you. And two, just to correct you, Your Honor, I believe the probable cause statement was submitted to the court the same day as the arrest. She was released the next day upon posting bail. Did she go through the... So she went through posting bail. She went through an initial appearance, but there was never any criminal complaint? There was never even an initial appearance. There was never a criminal complaint. There were no charges. This was done without consultation with the DA's office. So by Detective Conti. Correct. Thank you. Correct. So... Was the search warrant issued even though it wasn't executed before her arrest? It was issued and she was arrested during the execution of the search warrant. Okay, after a judge had found the probable cause on the search warrant, but before they had finalized the execution of it. Correct. And two, Milwaukee County had somewhat changed their procedures. In this case, the search warrant was issued when Detective Conti, in court for another matter, suggested that he, to the DA that was there, that he would like to get a search warrant for a different case. DA looked it over, said, fine. Judge is Judge Simple. He said, fine. And then, so they executed the search warrant, but then they arrested her. And apparently there were at least two other members of the county government that agreed that she should be arrested on this background. Now, two, you know, what concerns me is that the county and Detective Conti has suggested that when this had occurred, that the money was kept by the county, but because the, or by the agency, but, and that should be sufficient for probable cause, but that is not true. And the reason that isn't true is because after the fact, the detective, perhaps recognizing the mistake that he had made, started subpoenaing their personal records and found nothing, of course. So obviously she's never charged. There was no probable cause even for arrest here because the elements that I just suggested under 94320, I don't think any of them are met. And two, you talk about the five people that made these complaints. I mean, since when is our government controlled by the number of people who make these suggestions? You should arrest her because it's fraud. You know, I hate to say this, but I was writing my reply brief during Holy Week and all I could think of was crucify him, crucify him. There's a little bit of that in this because these women, we find out later, were actually competing with the agency. They set up their own company when we're bidding actively during this timeframe to try to obtain business away from the merged entity while they're working there. But Officer Conti didn't know that, right? He did not. I agree with that, Your Honor, yes. But I think I point that out because it just shows how mob mentality sometimes can cause these kind of problems. And these people were all in legion with each other claiming that this woman committed fraud when, you know, the fact of the matter is she didn't and she was never charged and she wouldn't be charged because I don't think a single one of the elements have ever been met in this case. Your Honor, we'll give you a couple minutes for rebuttal then. Thank you, Your Honor. Thank you very much. Mr. Flood, we'll now turn to you. Good morning, Your Honors, and may it please the court. The information known to Detective Conti at the time of Ms. Lombach's arrest was more than sufficient to establish probable causes to each element of Wisconsin's theft by fraud statute. Detective Conti's pre-arrest investigation included independently speaking with a Milwaukee County forensic auditor and five additional witnesses who worked under Ms. Lombach's supervision and who had firsthand knowledge and were familiar with Interfaith's grant with Milwaukee County. Obviously, Mr. Flood, prosecutors don't charge on beyond reasonable doubt. They charge on probable cause. Why do you think the case fell apart as it did? Your Honor, I can't speak to that. It's not in the record as to what the DA's decision-making process was. You may continue. The witnesses that Detective Conti interviewed provided him with consistent information that Ms. Lombach obtained grant funds from Milwaukee County on behalf of Interfaith as an expense reimbursement for a purchase order she placed with Dell on the last day of the grant period. The Wisconsin Court of Appeals has unequivocally held that obtaining property of another  does not require the suspect or person of interest to retain those funds or the property personally for herself. It's sufficient for this element to be satisfied if the property is obtained by fraudulent means and those means induce the other party to part with that property. It's undisputed that the witnesses told Detective Conti this prior to his arrest of Ms. Lombach. It's also undisputed that the witnesses informed Detective Conti that she obtained these funds on behalf of Interfaith by making a representation to the county that she knew to be false. In this regard, the witnesses reported that she represented that Interfaith had purchased the computers from Dell under the grant. They also told him that she canceled the order in January or February of 2018 and knew that the computers were not to be used or were not delivered and that Interfaith had not paid for the computers as she had represented to the county. Despite this knowledge, the witnesses informed Detective Conti that Ms. Lombach took no action to correct her previous representation to the county. She took no action to amend the expense reimbursement report  And she took no action to return the funds that Interfaith had obtained from the county as a result of this representation that she made. The money was ultimately returned, wasn't it? That's correct, Your Honor. When in the sequence of events was it returned? The money was returned well after Ms. Lombach's arrest and well after she had been terminated from the organization. It should be noted as well that she was arrested in November of 2018. The purchase allegedly occurred in December of 2017 and according to the witnesses, Ms. Lombach had canceled the order in January or February of 2018, months before she was arrested. The Wisconsin Court of Appeals has held that a suspect's failure to correct a knowingly false representation that induces another party to part with property is considered a false representation under Wisconsin's theft by fraud statute. Additionally, her reported knowledge of the inaccurate representation and her inaction towards correcting it also establishes that there was probable cause that her representation was made with the intent to deceive the county. It's well settled that when one reasonably credible witness informs an officer that a crime has been committed, that officer has probable cause to make an arrest. Once probable cause is established, there's no duty to perform any additional investigation prior to making the arrest.  upon which to act. Not whether it would be reasonable for him to continue investigating. Because the undisputed facts here establish that Detective Conti had probable causes to each element for the crime that Ms. Lombach was arrested for, her Fourth Amendment rights were not violated by way of her arrest. Mr. Flood, does the record reveal whether or not these funds were, quote, use it or lose it type funds where it had to be expended by the end of the year or they would be lost to the agency? That's my understanding. So, and I think that that also goes to circumstantial evidence of intent, the fact that in addition to all the other information that Detective Conti was provided by these witnesses, the fact that Ms. Lombach had expressed intent to these witnesses that she needed to use the unspent grant funds before the year's end and then placed an order on the last day of the grant period and submitted the expense report on the last day of the grant period. Because Plaintiff's Counsel has indicated to the court that he's no longer pursuing a Fifth Amendment or Sixth Amendment, Section 1983 claim, I want to address that. One thing I would like to point out is that in the complaint, the operative complaint in this case, the only allegation that a Milwaukee County policy violated Ms. Lombach's rights pertain to the Fifth or Sixth Amendment right to counsel. There was some briefing in the appellate briefs by the Lombachs that, although it was difficult to ascertain, it seemed as though they might be arguing that there's a Monell claim as to the unlawful arrest, but that was not pled, it was not briefed at the district court, and it hasn't been raised until now on this appeal. Mr. Flood, does the record reveal, contain any facts that Detective Conte had any questions with regard to the credibility of the five witnesses that he was interviewing? At the time of Ms. Lombach's arrest, the record does not reflect that Detective Conte had any reason to believe that these witnesses were being untruthful to him. In addition to that, the fact that he had independently interviewed these witnesses, five of them, who had worked under Ms. Lombach's supervision, they all provided consistent corroborating information as to the elements of the theft by fraud statute. Any information that was provided by one witness that may not have been provided by another was supplemental as opposed to contradictory. Nothing that the witnesses told Detective Conte contradicted each other. And again, it's undisputed that Mr. Conte did not have knowledge of the competing business that these witnesses had set up during the investigation. Or prior to his investigation. However, even if he did, the fact still remains that these witnesses were otherwise consistent with each other. It was consistent with the information that the Milwaukee County Forensic Auditor had provided to Detective Conte about his four-month investigation into the allegation that Ms. Lombach had committed fraud prior to Detective Conte's involvement. During that investigation, the auditor had interviewed four of the five of the witnesses that Detective Conte interviewed, and they provided similar information to the auditor that they then again provided to Detective Conte. So given the number of witnesses that were interviewed, the consistency of the information that they provided, and the absence of anything glaring that would suggest that they were being untruthful with Detective Conte, the record does not reflect that there was any reason for Detective Conte to doubt the truthfulness of the information he received. Thank you very much, Mr. Flood. Thank you. Mr. Ganser, we'll move to you for rebuttal. We'll give you two minutes. Thank you, Your Honor. Something was just stated that is not true. It indicated that, and I believe it was attributable to the five women, that Lorene Lombach canceled the order, and that isn't true. Dell canceled the order because of insufficient credit. Now, what we see here from Detective Conte and the county is that these witnesses are consistent, so they should be believed. But all they were consistent on is saying that computers were ordered, they never showed up. And I pointed this out in my direct argument that the actions of Detective Conte after the fact, when he starts taking her, taking Chris and Lorene's personal information, what's he trying to find out there? He's trying to find out what happened to the computers, what happened to the money, and somehow that she had stolen things. I don't understand that, but there's this backfilling going on by the county trying to justify what they had done here. And the fact of the matter is the county and the detective in this case had nothing. So they had to start making it up. I mean, the fact is that they pointed out that if the agency keeps the money, that can be considered intent and all this sort of thing. But the fact of the matter is the money ultimately was returned. Ms. Lombach didn't have much information about the return of the computers or actually the cancellation of the computers until later on. So there was no probable cause. I would point out in the Soerenberger case is quite clear there. They were checking a computer and made an arrest while there was a computer being checked. And the fact of the matter is the court said, you should do that work first, get that computer information done, and then determine whether you've got probable cause. See, my time is up. Thank you. Thank you, Mr. Ganser. Thank you, Mr. Flood. The case will be taken under advisement.